IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NANCY BEATRIZ MARTINEZ,

    Plaintiff,

v.                                                    CIV 18-1222 KBM

ANDREW M. SAUL,
Commissioner of Social
Security Administration,

    Defendant.

# **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum (*Doc. 20*) filed on July 12, 2019. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 3*; *10*; *11*. Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted in part.

**I.**    **Procedural History**

On January 13, 2015, Ms. Nancy Beatriz Martinez (Plaintiff) protectively filed applications with the Social Security Administration for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (SSA), and for Supplemental Security Income (SSI) under Title XVI of the SSA. Administrative Record[1]

---

[1] Documents 15-1 through 15-9 contain the sealed Administrative Record. *See Docs. 15-1–15-9*. The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

(AR) at 224, 231. Plaintiff alleged a disability onset date of January 8, 2015. AR at 224, 231. Disability Determination Services (DDS) determined that Plaintiff was not disabled both initially (AR at 65-96) and on reconsideration (AR at 97-124). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her applications. AR at 143-44.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 34-64. ALJ Lillian Richter issued an unfavorable decision on March 23, 2018. AR at 12-33. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 166), which the council denied on November 5, 2018 (AR at 1-7). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II. Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." Ryan v. Colvin, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." Grogan, 399 F.3d at 1261 (citing Williams v. Bowen, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); see also 20 C.F.R.
§§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process,[2] ALJ Richter found that Plaintiff "has not engaged in substantial gainful activity since January 8, 2015, the alleged onset date." AR at 20 (citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: diabetes with polyneuropathy, obesity, chronic chest pain, calcaneal spurs of the left hand, major depressive disorder, borderline intellectual functioning, mild degenerative disc disease of the lumbar spine,

---

[2] ALJ Richter first found that Plaintiff "meets the insured status requirements of the Social Security Act through March 30, 2020." AR at 20.

right plantar fasciitis post fasciotomy, bilateral ankle/foot arthrosis, and moderate obstructive sleep apnea." AR at 20 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The ALJ noted that Plaintiff has the following non-severe impairments: hepatomegaly, gastritis, hiatal hernia, dyslipidemia, vitamin-D deficiency, hypertension, TMJ, and a sebaceous cyst. AR at 21.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 21 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). At Step Four, the ALJ considered the evidence of record and found that Plaintiff

> has the [RFC] to perform work at the sedentary exertional level as defined by 20 [C.F.R. §] 404.156[7], 20 [C.F.R §] 416.967 and SSR 83-10. She can occasionally stoop, kneel, crouch, crawl and climb ramps or stairs, but she can never balance or climb ladders, ropes or scaffolds. She should avoid exposure to unprotected heights, hazardous machinery, dust, odors, fumes and other pulmonary irritants. She cannot operate a motor vehicle. She can frequently handle and finger bilaterally. [She] is limited to simple, routine and repetitive work and can make simple, work-related decisions in a workplace with few changes in [a] routine setting. She can have incidental interaction with the general public. [She] can hear, understand and communicate simple information. She may require the use of a handheld assistive device for purposes of ambulation.

AR at 23. ALJ Richter found that Plaintiff "is unable to perform any past relevant work." AR at 26 (citing 20 C.F.R. §§ 404.1565, 416.965). The ALJ found that Plaintiff can perform the jobs of stuffer, touch-up screener, and table worker. ALJ at 27. The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 8, 2015, through the date of [the ALJ's] decision." AR at 28 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

4

### III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

### IV. Discussion

Plaintiff raises three issues in her motion. She argues that the ALJ erred in:

(1) failing to properly evaluate her RFC; (2) failing to fully consider the impact of her obesity in combination with her other impairments; and (3) failing to evaluate whether a significant number of jobs exists in the national economy. *See Doc. 20* at 5.

### A. The ALJ adequately evaluated Plaintiff's RFC.

Plaintiff argues that ALJ Richter erred in evaluating the RFC, because she failed to properly consider the opinions of Eligio Padilla, Ph.D. and Jorge Sedas, M.D., as well as Plaintiff's own statements. *Id.* at 14-18.

#### 1. The ALJ adequately evaluated Dr. Padilla's opinion.

Plaintiff first argues that the ALJ erred in evaluating the opinion of Dr. Padilla, who is a psychologist and an acceptable medical source under the regulations. *See Doc. 20* at 14-15. Plaintiff saw Dr. Padilla one time in connection with her application for DIB and SSI. *See* AR at 577-83. Dr. Padilla completed a Psychological Source Statement of Ability to do Work-Related Activities, where he opined that Plaintiff had marked limitations in her abilities to understand and remember detailed or complex instructions, carry out instructions, attend and concentrate, work without supervision, interact with the public or her supervisors, and adapt to changes in the workplace; a moderate limitation in her abilities to interact with coworkers; and mild limitations in her abilities to understand and remember short and simple instructions, be aware of normal hazards and react appropriately, and use public transportation or travel to unfamiliar places. AR at 581.

When considering the opinions of medical sources, the Tenth Circuit has expressly noted that

an ALJ must consider the opinion of *every* medical source and provide specific, legitimate reasons for rejecting it. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir.2003); see also SSR 96–5p, 1996 WL 374183, at * 1 ("opinions from any medical source about issues reserved to the Commissioner must never be ignored"). . . . When deciding what weight to assign to an opinion, an ALJ must consider the factors set forth at 20 C.F.R. §§ 404.1527(d) and 416.927(d).

*Lauxman v. Astrue*, 321 F. App'x 766, 769 n.2 (10th Cir. 2009) (emphasis added) (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)). Thus, the factors for otherwise assessing the weight to be given to a medical opinion are the same, whether given by a treating or non-treating source, and include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotations omitted).[3]

With respect to the first and fifth factors, the ALJ noted that Plaintiff saw Dr. Padilla for a consultative examination. AR at 22. With respect to the second factor, ALJ Richter summarized Dr. Padilla's examination of Plaintiff and his findings. AR at 22 (citing AR at 577-83). With respect to the third and fourth factors, the ALJ made specific findings (discussed below) regarding how Dr. Padilla's opinions were supported by his examination findings and by the record evidence. AR at 22.

---

[3] Additionally, for claims brought before March 27, 2017, the opinion of a "treating source" is entitled to "controlling weight" if well-supported by medical evidence and not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c). For claims filed after March 27, 2017, the rules in § 404.1520c apply for consideration of all medical opinions. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

Plaintiff asserts that the ALJ erred in two ways. First, the ALJ "failed to consider that Dr. Padilla found limitations in the abilities to concentrate and interact with the public and coworkers were results of her affective, cognitive, and behavioral signs of her depression." *Doc. 20* at 15 (citing AR at 22). Second, "the ALJ picked and chose from the medical evidence" to support her conclusion that Plaintiff's depression was stable. *Id.* Plaintiff refers to Dr. Padilla's Psychological Source Statement of Ability to do Work-Related Activities, where he opined on Plaintiff's marked, moderate, and mild limitations. *See* AR at 581. Dr. Padilla noted that the bases for his opinions were Plaintiff's diagnoses of borderline intellectual functioning, major depression, chronic pain, and fatigue. AR at 580-81.

ALJ Richter specified that she gave Dr. Padilla's opinion "little weight because it is inconsistent both internally and with the surrounding record." AR at 22. She specified that Dr. "Padilla's clinical comments were particularly focused on cognition but made no, or only cursory, comments about sociability and concentration." AR at 22. The ALJ gave several examples of the inconsistencies regarding sociability. For example, she noted Dr. Padilla's observation that Plaintiff maintained normal eye contact. AR at 22, 579. She discussed the third-party function report, which was filled out by a person – Tatiana Rodriguez – who had a relationship with Plaintiff as her son's godmother. AR at 22, 300-08. Ms. Rodriguez' report "focused primarily on physical issues" and "[t]he most said about her social interaction was that she did not have a lot beyond family." *See* AR at 22, 304. Plaintiff does not point to, nor can the Court find, notes from Dr. Padilla's exam that directly correlate to marked limitations in sociability (i.e., her abilities to interact with the public and supervisors).

The same is true with concentration. While Dr. Padilla found marked limitations in Plaintiff's abilities to carry out instructions, attend and concentrate, and work without supervision as a result of her depression and other diagnoses (AR at 581), the ALJ noted that Plaintiff had no problems remembering to groom or take medicine, preparing meals, driving to the grocery store, managing money, or reading. AR at 22, 301-04. Ms. Rodriguez also reported that Plaintiff can follow spoken instructions "well" and written instructions "very well." AR at 22, 305.

ALJ Richter also noted that Dr. Padilla's opinion was inconsistent with other record evidence that showed Plaintiff's "depression was stable and [showed] normal affect and mood." AR at 22 (citing AR at 798, 936, 962). Plaintiff contends the ALJ cherry-picked records to show that her depression was stable and notes additional records that support her allegation of depression. *Doc. 20* at 15 (citing AR at 295, 661, 666, 907). But as the Commissioner points out, there are other records that support the ALJ's conclusion. *Doc. 24* at 16 (citing AR at 432, 443, 446, 451, 454, 459, 463, 467, 590, 623, 659, 798, 851, 916, 990). Once again, the Court may not reweigh the evidence. Plaintiff fails to show that ALJ Richter erred in evaluating Dr. Padilla's opinion.

2. **The ALJ adequately evaluated Dr. Sedas' letter.**

Plaintiff next argues that ALJ Richter inadequately weighed the opinion of Dr. Sedas, her primary care physician. *Doc. 20* at 15-16. Dr. Sedas treated Plaintiff from September 2015 through May 2017. AR at 654-84, 792-805, 820-31, 903-08, 917-42. On August 31, 2017, Dr. Sedas wrote a letter for the record that provides:

> [Plaintiff] has been a patient of mine for the last couple years. She is followed closely and regularly in our clinic. She suffers from multiple multisystem problems which have resulted in considerable health and

> physical issues. She has different physical [sic] to control diabetes, symptomatic depression and recurring abdominal pain just to name a few of her problems. Her medical and mental health has a significant negative impact on her quality of life and ability to be gainfully employed.

AR at 1053.

"The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the 'treating physician rule.'" *Padilla v. Colvin*, No. CV 14-495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)). "A treating physician's opinion is accorded controlling weight because the treating physician has a 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.'" *Id.* (quoting *Doyal*, 331 F.3d at 762 (internal quotation omitted)).

If an ALJ decides that a treating physician's opinion is entitled to less than controlling weight, the ALJ must follow two steps. *See id.* at *5. "First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record." *Id.* If the opinion is not well-supported by the medical evidence or if it is "inconsistent with other substantial evidence in the record[,]" the ALJ will not give the opinion controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). At the second step of the analysis of a treating physician's opinion, the ALJ "must determine what deference [s]he will accord

the opinion after considering the six deference factors listed" in 20 C.F.R. §§ 404.1527. *Padilla*, 2015 WL 10383109, at *4; *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). Again, as noted above, these factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Padilla*, 2015 WL 10383109, at *4 (quoting *Watkins*, 350 F.3d at 1300 (internal quotations omitted)). "When evaluating any medical opinion in the record, the ALJ must give good reasons – reasons that are 'sufficiently specific to make clear to any subsequent reviewers' – for the weight that [s]he ultimately assigns to" those opinions. *Id.* (quoting *Langley*, 373 F.3d at 1119 (internal quotations omitted)). The ALJ's "determination, like all of [her] findings, must be supported by substantial evidence." *Id.*

Plaintiff first contends that ALJ Richter "did not perform the two-step inquiry . . . ." *Doc. 20* at 17. The ALJ clearly considered the two-step inquiry, however, as she stated: "[w]hile I acknowledge that as a treating source, his opinion may be entitled to controlling weight, the lack of support in his own medical records for his ultimate conclusion and the lack of a functional assessment renders the opinion of little value to me in formulating the [RFC]." AR at 25. The Court reads the ALJ's statement that Dr. Sedas' opinion has "little value" as it having "little weight." It is clear that ALJ Richter did not give the opinion controlling weight, and the Court will not reverse on this basis. *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) (noting that because it was clear

11

"from the decision that the ALJ declined to give controlling weight to" the treating physician's "opinion, [the court would] not reverse on this ground") (citation omitted).

Plaintiff also summarily argues that the ALJ's stated reason for giving Dr. Sedas' opinion little weight – that "there was a lack of support for his conclusion in the medical records" – is insufficient. *Doc. 20* at 17. Although the ALJ's treatment of Dr. Sedas' opinion was scant, the Court finds she adequately evaluated the opinion at the second step of the treating physician analysis.

With respect to the first, second, and fifth factors, the ALJ noted that Dr. Sedas saw Plaintiff for diabetes, depression, and other health concerns, and that he often "focus[ed] on transient concerns like a sebaceous cyst." AR at 25 (citing AR at 936). With respect to the third and fourth factors, the ALJ found that "[i]t was not uncommon for [Dr. Sedas] to describe [Plaintiff's] appearance as healthy with no acute distress and a normal mood with no decrease in concentration." AR at 25 (citing AR at 990). The ALJ also found Dr. Sedas' statement that Plaintiff's diabetes, depression, and abdominal pain have "a 'significant negative impact' on [her] ability to be employed" (AR at 1053) to be "inconsistent with his own treatment notes wherein he calls both her diabetes and her depression 'stable' . . . ." AR at 25 (citation omitted).

Plaintiff argues in her reply brief that "[t]he ALJ and the Commissioner are misplacing the significance of a 'stable' condition." *Doc. 25* at 3. "Stable does not mean no impairment, but rather that the condition is 'not changing or fluctuating.'" *Id.* (quoting *Stable*, Merriam-Webster's Medical Dictionary, available at https://www.merriam-webster.com/dictionary/stable#medicalDictionary (last visited Nov. 12, 2019. In this case, Dr. Sedas himself described Plaintiff's condition as not just "stable," but as

"controlled" (AR at 903), and as "stable[, c]ontrol improved" (AR at 672). Thus, the Court finds no error in the ALJ's characterization of Plaintiff's diabetes as stable. As Plaintiff has failed to establish legal error, the Court will not remand on this basis.

### 3. The ALJ adequately weighed Plaintiff's own statements.

Plaintiff next asserts that the ALJ did not properly evaluate her allegations of her symptoms in accordance with Social Security Ruling 16-3p, 2017 WL 5180304 (Oct. 25, 2017). *Doc. 20* at 17-18. Social Security Ruling 16-3p defines the two-step process an ALJ must use to evaluate a claimant's symptoms. SSR 16-3p, 2017 WL 5180304, at *3-5. At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms, such as pain." *Id.* at *3. At the second step, after the ALJ has found such an impairment, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id.*

> As part of the step two evaluation, the ALJ considers the record evidence, the claimant's statements, medical and non-medical source statements, and the non-exhaustive list of factors in 20 C.F.R. §[§ 404.1529(c)(3) and] 416.929(c)(3), which include:
>
> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

      7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Ramirez v. Berryhill*, No. CIV 17-0781 KBM, 2018 WL 4915830, at *8 (D.N.M. Oct. 10, 2018) (quoting SSR 16-3p at *7-8).

    Relevant to this issue, ALJ Richter discussed:

  <u>Daily activities</u>: ALJ Richter observed that Plaintiff prepares breakfast for her children and gets them ready for school, reads, shops, and sews. AR at 24 (discussing AR at 300-08).

  <u>The location, duration, frequency, and intensity of pain or other symptoms</u>: ALJ Richter summarized Plaintiff's pain and symptoms as: "neuropathic pain in her hands and feet, . . . [p]oor foot sensation and poor balance" (AR at 23), sleep apnea and depression (AR at 24), "pain extending from the peroneal tendons to the ankle and heel" (AR at 24 – citing AR at 550), inability to walk on heels or toes and difficulty touching her toes (AR at 24 – citing AR at 572), "well-controlled" pain after a plantar fasciotomy on her right heel (AR at 25 – citing AR at 867), pain was reduced but still present in the plantar-heel area of her left foot after an endoscopic plantar fasciotomy (AR at 25 – citing AR at 884-91), and abdominal pain (AR at 25).

  <u>Type, dosage, effectiveness, and side effects of any medication</u>: Plaintiff uses an insulin pump for her diabetes, but even so, she testified that her blood sugars were often high. AR at 23, 43-44; *see also* AR at 24 (citing AR at 510, 672, 728). The ALJ also noted that Plaintiff takes medication for depression, which makes her feel better. AR at 24.

Treatment other than medication: The ALJ noted that Plaintiff used a cane at her hearing. AR at 23. Plaintiff uses a CPAP machine for her sleep apnea. AR at 24.

To help with Plaintiff's foot pain, her physicians have prescribed diabetic shoes (AR at 24 – citing AR at 549, 552), recommended stretching exercises (AR at 24 – citing AR at 550), performed an endoscopic plantar fasciotomy of the left foot (AR at 25 – citing AR at 884-91), stem-cell injections (AR at 25 – citing AR at 894), and considered ankle-foot braces (AR at 25 – citing AR at 888).

Plaintiff takes issue with the ALJ's observation that:

> [T]he record shows a good deal of functionality throughout 2015. The new insulin pump took some getting used to, but sugars improved once [Plaintiff] understood the mechanism and A1c levels decreased. Doctor Bagga saw no physical problems, neurological testing had no more than mild results, and Dr. Chukwurah said she had been doing fairly well with reliance on little more than diabetic shoes. In 2016, symptoms intensified and resulted in surgery on the right foot, after which [Plaintiff] reported her pain as under control. Testing found ongoing sensation in her feet. Granted, this post-op equilibrium was short-lived because the left foot became aggravated and required its own surgery. A more difficult convalescence than the first, she again felt better after the stem-cell injections.

AR at 26. Plaintiff refers to other medical records that support her assertions that she had a host of medical issues in 2015 and 2016. *Doc. 20* at 18 (citations omitted).

The Court finds that the ALJ adequately evaluated Plaintiff's statements pursuant to SSR 16-3p and summarized the record in light of Plaintiff's statements. The Court may not reweigh the record evidence; it may only review the ALJ's "decision to ensure that she applied the correct legal standard and that her findings are supported by substantial evidence." *Kayser v. Berryhill*, No. 16-cv-0978 SMV, 2017 WL 4857442, at *3 (D.N.M. Oct. 25, 2017) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). The Court finds that the ALJ's findings regarding Plaintiff's subjective complaints of pain

and other symptoms are supported by and linked to substantial evidence in the record. *See id.* at *4 (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

## B. The ALJ sufficiently discussed the limiting effects of obesity.

Plaintiff asserts that ALJ Richter "failed to make any findings as to the impact, if any, obesity has on [her] other impairments or on her RFC." *Doc. 20* at 19. "Social Security Ruling (SSR) 02–1p requires an ALJ to consider the effects of obesity when assessing RFC, including the fact that 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'" *DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010) (quoting SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002)). "Thus, an ALJ may 'not make assumptions about the severity or functional effects of obesity combined with other impairments,' but rather, must 'evaluate each case based on the information in the case record.'" *Id.* (quoting SSR 02-1p, 2000 WL 628049, at *6).

Here, the ALJ recognized that obesity was a severe impairment and "that weight extremes can exacerbate other impairments[,]" and she stated that she "considered the effects of obesity in accordance with [SSR] 02-1p." AR at 20-21. She "conclude[d] that the combined effects of obesity with the other medically determinable impairments do not meet or equal any of the listed impairments." AR at 21. Plaintiff argues that these statements are not enough – that the ALJ should have made more findings at Step Four of the decision to explain how obesity impacted the RFC. *Doc. 20* at 19-20. She compares this case to *DeWitt*, where the Tenth Circuit remanded because "there [was] nothing in the decision indicating how or whether her obesity influenced the ALJ in setting [the RFC] restrictions." 381 F. App'x at 785.

16

In *DeWitt*, the ALJ included obesity as a severe impairment at Step Two and limited the claimant to sedentary work with various restrictions. *Id.* at 784. But the *DeWitt* decision is distinguishable.

> There, the ALJ gave "considerable weight" to a physician's testimony (Dr. Brahms) when formulating the claimant's RFC. "But in doing so, the ALJ mistakenly believed that Dr. Brahms had identified obesity as one of DeWitt's medical conditions. In fact, Dr. Brahms offered no opinion about the functional effects of DeWitt's obesity . . . [h]e simply never mentioned obesity." Thus, the Tenth Circuit concluded that the ALJ could not rely on Dr. Brahms' testimony to "satisfy the duty to consider the effects of DeWitt's obesity on her other severe impairments."

*Lopez v. Berryhill*, No. CV 16-0638 KBM, 2017 WL 2799293, at *7 (D.N.M. May 31, 2017) (quoting *Dewitt*, 381 F. App'x at 785). ALJ Richter did not make a similar mistake here. Instead, she summarized the medical record, specifically citing records that recorded Plaintiff's obesity and related problems. *See, e.g.*, AR at 24 (citing AR at 510 – a Feb. 26, 2015 note that Plaintiff "has significant insulin resistance do [sic] to her morbid obesity and BMI of 40 requiring Humulin R U500 insulin and metformin"), 672 (Dec. 7, 2015 assessing "morbid obesity")).

While the Court encourages ALJ Richer on remand to include more specific conclusions regarding how obesity impacted Plaintiff's RFC, the Court finds no legal error. Further, Plaintiff does not discuss nor cite to any record evidence that would support a finding that her obesity contributes to limitations beyond those that ALJ Richter found. *See Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (finding that "Mr. Arles does not discuss or cite to any evidence showing that obesity further limited his ability to perform a restricted range of sedentary work"); *Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (noting that the plaintiff pointed "to no medical evidence

indicating that her obesity resulted in functional limitations"). Consequently, the Court finds that remand is not appropriate on this basis.

> **C. The ALJ did not discuss whether 8,100 jobs rises to a significant level in the national economy.**

At Step Five, the ALJ found that Plaintiff can perform the jobs of stuffer (3,800 jobs), touch-up screener (1,500 jobs), and table worker (2,800 jobs), which represent a total of 8,100 positions in the national economy. AR at 27. Relying on *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), Plaintiff contends that the ALJ committed legal error by failing to explicitly consider whether 8,100 jobs rises to a significant level in the economy. *Doc. 20* at 21. The Commissioner argues that the *Trimiar* analysis is only implicated when the ALJ identifies *local* or *regional* numbers of positions *and* that number is relatively small. *Doc. 24* at 23 (citations omitted). The Commissioner contends that remand is unnecessary because the ALJ identified national jobs and because the number of jobs "fits comfortably within [the] range" that the Tenth Circuit has found to be significant. *Id.* at 24 (citations omitted). The Court disagrees and refers the Commissioner to its analysis in *Waterfield v. Berryhill*, No. CV 18-0515 KBM, 2019 WL 1517586, at *11 (D.N.M. Apr. 8, 2019), where it faced a similar issue.

In *Waterfield*, ALJ Richter found that the claimant could perform 25,900 jobs in the national economy. *Id.* Again, ALJ Richter failed to determine whether that number rose to a significant level. *Id.* Contrary to the Commissioner's position, however, the Court found that 25,900 jobs was not "so numerous as to affirm the decision where the ALJ did not consider the issue." *Id.* "As Judge Yarbrough said in a recent case, the fact that *Trimiar* may not be directly applicable 'does not mean that an ALJ's findings

regarding the number of jobs existing in the national economy is beyond scrutiny. Rather, the issue remains as to whether the ALJ's finding is supported by substantial evidence.'" *Id.* (quoting *Garcia v. Berryhill*, No. 1:16-CV-01266 SCY, 2018 WL 1620922, at *5 (D.N.M. Mar. 31, 2018)). "Such a determination may overlap with considerations laid out in *Trimiar*, such as the 'reliability of the vocational expert's testimony.'" *Id.* (quoting *Garcia*, 2018 WL 1620922, at *5).

Because 8,100 is a relatively low number of jobs, and because it is not clear whether the jobs "exist[ ] in significant numbers either in the region where [Plaintiff] lives or in several regions of the country[,]" 42 U.S.C. § 423(d)(2)(A), the Court will not affirm the ALJ's decision. See *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (finding that "25,000 jobs meets the statutory standard" where it is clear that jobs are available "in several regions of the country").

## V. Conclusion

Plaintiff has failed to show that the ALJ erred in evaluation her RFC or in assessing limitations due to obesity. However, ALJ Richter failed to consider whether 8,100 jobs rises to a significant level in the economy. Thus, the Court will remand for consideration of this issue.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum (*Doc. 20*) is **GRANTED**. A final order pursuant to Rule 58 of the Federal Rules of Civil Procedure will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent